


**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID BLAIN CARROLL,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 5:08-cv-01181-CLS** |
| | ) | |
| **THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY,** | ) | |
| | ) | |
| **Appellee.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an appeal from a final summary judgment entered by the United States Bankruptcy Court for the Northern District of Alabama against David Blain Carroll ("appellant").[1] In an adversary proceeding before the bankruptcy court, appellant unsuccessfully attempted to secure a discharge of his personal liability for the payment of estate taxes owed to the United States by the estate of his deceased father. The bankruptcy court granted summary judgment on that issue in favor of the United States, and held that appellant's tax debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C).[2] Appellant appeals from that decision. Upon consideration

---

[1] Throughout most of the proceedings before the bankruptcy court, appellant was represented by an attorney. However, before this court appellant is proceeding *pro se.*

[2] The pertinent statutory language reads as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

of the pleadings, the parties' briefs, and the evidence of record, this court concludes that the judgment of the bankruptcy court is due to be affirmed.

## I. STANDARD OF REVIEW

Generally speaking, as the U.S. District Court for the Southern District of Alabama aptly stated,

> [i]n an appeal of a bankruptcy court decision, the district court sits as an appellate court. In that capacity, the district court cannot make independent factual findings, and must affirm the bankruptcy court's findings of fact unless they are clearly erroneous. *Alabama Dept. of Human Resources v. Lewis*, 279 B.R. 308, 313-14 (S.D. Ala. 2002) (citing *In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir. 1992)); *see also In re Spiwak*, 285 B.R. 744, 747 (S.D. Fla. 2002) ("A district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court."); Fed. R. Bankr. Proc. 8013 (on appeal, bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous"). A finding of fact is clearly erroneous when, even if there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *In re Hatem*, 273 B.R. 900, 903 (S.D. Ala. 2001).
>
> By contrast, a bankruptcy court's conclusions of law are subject to *de novo* review by a district court. *In re Brown*, 303 F.3d 1261, 1265 (11th Cir. 2002); *Club*, 956 F.2d at 1069; *In re Calvert*, 907 F.2d 1069, 1070 (11th Cir. 1990). Finally, a bankruptcy court's equitable determinations are reviewed for abuse of discretion. *Spiwak*, 285 B.R. at 748 (citing *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir. 1990)).

---

> (1) for a tax or a customs duty--
>
> (C) with respect to which the debtor . . . willfully attempted in any manner to evade or defeat such tax . . . .

11 U.S.C. § 523(a)(1)(C).

*In re Boutwell*, Civil Action No. 03-0355-WS-C, 2003 WL 25629875, at *5 (S.D. Ala. Dec. 15, 2003). However, an exception to the general rule arises when a district court reviews a bankruptcy court's ruling on a motion for summary judgment, as is the case here. In such cases, the "clearly erroneous" standard does not apply:

> Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings and contested matters in bankruptcy cases by Bank. R. 7056 and 9014, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "'In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
>
> It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact. *See Carey Lumber Co. v. Bell*, 615 F.2d 370, 378 (11th Cir. 1980) (*per curiam*) (holding that a bankruptcy court that (1) determined that there were no issues of material fact, (2) accepted all undisputed factual allegations as true, and (3) found that summary judgment was warranted as a matter of law, "followed the correct legal standard."). Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c). Our law is also clear that an appellate court reviews a bankruptcy court's grant of summary judgment *de novo*. *See In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995) ("We review the bankruptcy court's grant of summary judgment *de novo*, applying the same legal standards used by the trial

> court."); *In re Club Assocs.*, 951 F.2d 1223, 1229 (11th Cir. 1992) (citing *In re Nash*, 765 F.2d 1410, 1412 (9th Cir. 1985) ("The bankruptcy court's grant of summary judgment, affirmed by the district court, is subject to *de novo* review.")).
>
> To the extent, however, that the district court's opinion may be read to suggest that appellate review of a bankruptcy court's entry of summary judgment may be governed by a clearly erroneous standard, we take this opportunity to make clear that both the district court and this Court review a bankruptcy court's entry of summary judgment *de novo*.

*In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334-35 (11th Cir. 2001).

Accordingly, because appellant appeals from an adverse ruling on summary judgment, this court will review the bankruptcy court's decision *de novo*.

## II. SUMMARY OF FACTS[3]

Appellant' s father, George Carroll, died on March 17, 1998. The executors of George Carroll's estate are appellant and his siblings, Stephen Carroll and Judy Bullington.[4] In 1999, the total amount of tax owed to the United States was $2,554,547.[5] The executors and the Unites States agreed that the estate would satisfy the tax debt in separate, regular installment payments, pursuant to 26 U.S.C. § 6166.[6]

---

[3] This "Summary of Facts" is not, by any means, a comprehensive recitation of the evidence that was before the bankruptcy court. It is limited to those facts that are material and relevant to the legal issues that must be decided by this court.

[4] *See* United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 7, at 2-4.

[5] *Id.* at 4.

[6] *Id.* at 2-3. *See also* 28 U.S.C. § 6166(a)(1) ("If the value of an interest in a closely held business which is included in determining the gross estate of a decedent who was (at the date of his death) a citizen or resident of the United States exceeds 35 percent of the adjusted gross estate, the executor may elect to pay part or all of the tax imposed by section 2001 in 2 or more (but not

The final installment payment was to be remitted on December 17, 2012;[7] however, the estate stopped making payments in 2004.[8] Appellant estimates that the executors have, to date, paid approximately $1.2 million of the tax debt.[9] The debt remains unpaid.

Between the years 1998 and 2006, the executors collectively distributed various assets of the estate to themselves, personally, or to closely held corporations. Judy Bullington received real property (most notably the deceased's primary residence) and cash money.[10] Appellant and his brother, Stephen Carroll, were given shares of stock held by the estate in two close corporations: United Gunite, Inc., and Pressure Concrete, Inc.[11] Appellant claims that he and his brother planned to use the profits from those two entities to make the necessary installment payments to the United States.[12]

After the shares of stock were transferred to appellant and his brother, appellant became the "president" of Pressure Concrete, Inc., and the "vice-president" of United

---

exceeding 10) equal installments.").

[7] *Id.*

[8] United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 6 (Deposition of David Carroll), at 14.

[9] *See* doc. no. 5 (Appellant's Brief), at 1.

[10] *See* United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 6 (Deposition of David Carroll), at 43.

[11] *Id.* at 19.

[12] *See* doc. no. 5 (Appellant's Brief), at 1.

Gunite, Inc.[13] That said, and despite the fact that appellant owned stock in both companies, appellant considered Pressure Concrete to be "his" company, and United Gunite to be his brother's responsibility.[14]

In 2001, Stephen Carroll was charged with and subsequently pled guilty to "felony bribery of a public official."[15] The estate, appellant, and Pressure Concrete loaned or gifted large amounts of money to United Gunite; however, the company was no longer a viable entity by 2002, and it currently has no assets whatsoever.[16]

Pressure Concrete suffered constant financial woes under appellant's direction.[17] On February 28, 2004, appellant, acting in his capacity as an executor of his father's estate, transferred the last of the estate's liquid assets — $733,613.23 in cash — to a bank account owned by Pressure Concrete.[18] The transfer was not a loan. The infusion of cash was necessary, according to appellant, to ensure Pressure Concrete's continued existence. Two years later, in 2006, appellant used his personal funds to purchase his brother's stock in Pressure Concrete for approximately

---

[13] *See* United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 5 (Deposition of Steven Carroll), at 7.

[14] *See* doc. no. 5 (Appellant's Brief), at 1.

[15] United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 5 (Deposition of Steven Carroll), at 9, 18, 30.

[16] *See* United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 6 (Deposition of David Carroll), at 7-8.

[17] *See* doc. no. 5 (Appellant's Brief), at 1-2.

[18] *Id.* at 59-60.

$29,500.[19] That same year, Pressure Concrete, acting at appellant's direction, issued two separate checks, totaling $25,000, drawn and payable to the "University of Alabama Athletic Dept. – Tide Pride" *for the purchase of football tickets* — a fact proving only (if proof were needed) that, in this State, Alabama football is a secular religion promoting misplaced and false values.[20] Shortly thereafter, Pressure Concrete failed, and the remaining assets of the company were sold.

Appellant commenced bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Alabama on March 5, 2007. On May 16, 2007, appellant filed an adversary proceeding against the United States, seeking a discharge from his personal liability for the unpaid balance of the estate's tax debt. After a period of discovery, appellant filed a motion for summary judgment, in which he argued that his personal liability was not excepted from discharge. The United States contended that there was sufficient, undisputed evidence of record to show that appellant's personal liability for the tax debt was not dischargeable under 11 U.S.C. § 523(a)(1)(C). The bankruptcy court agreed with the United States, and granted summary judgment in its favor.

## III. DISCUSSION

This court finds that the material facts of this case are not in dispute. When

[19] United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 1.

[20] United States' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 2.

there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(c).

The sole legal issue to be decided by this court is, as appellee succinctly phrases it:

> Whether the bankruptcy court erred by granting final summary judgment to the United States on the ground that the undisputed facts sufficiently demonstrated that appellant, David Carroll, willfully evaded the payment of the estate tax liability arising from the estate of his father, George Carroll, and that appellant's personal liability, as executor, for that tax debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C).[21]

Appellant correctly acknowledges that he is personally liable for the estate's tax debt to the United States.[22] Executors of an estate become personally liable for the estate's taxes owed to the United States if they distribute property to beneficiaries *before* fully satisfying the estate's tax debt. *See* 31 U.S.C. § 3713(b) ("A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."); 26 C.F.R. § 20.2002-1 ("[I]f the executor . . . distributes any portion of the estate before all the estate tax is paid, he is personally liable, to the extent of the payment or distribution, for so much of the

[21] Doc. no. 6 (Brief for Appellee, United States of America), at 1.

[22] *See* doc. no. 5 (Appellant's Brief), at 1-2 ("The estate tax burden was placed on my brother and me . . . I knew that we, as a family, needed to pay taxes on my father's property . . . .").

estate tax as remains due and unpaid.”).

In the present case, the executors of George Carroll’s estate distributed all of the estate’s assets among themselves; yet, the estate’s outstanding tax bill remains unpaid. Accordingly, because appellant acted as an executor of his father’s estate, transferred the estate’s assets to himself and others, and the tax debt owed to the United States has not been paid in full, appellant is personally liable for the balance of the unpaid tax debt. *See id.*

Appellant argues that the bankruptcy court should have discharged him from his personal liability for three reasons: (1) the value of the estate was, in appellant’s opinion, artificially inflated for tax assessment purposes; (2) Pressure Concrete failed because he was not prepared “to handle the business that [he] inherited” from his father; and (3) he does not “have the financial ability to pay the tax and do[es] not believe [he] should be held solely responsible for it.”[23] In short, his arguments are not relevant to the issue before this court — *i.e.*, whether the bankruptcy court erred in its holding that the tax debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C).

“A debtor . . . is generally granted a discharge from all debts that arose prior to the filing of the bankruptcy petition.” *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir. 2001) (citing 11 U.S.C. § 727(b)). “[T]his ‘fresh start’ policy is only available to the

[23] *Id.*

'honest but unfortunate debtor.'" *Id.* (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). While tax debts are, in most instances, dischargeable, such debts are excepted from being discharged if "the debtor . . . willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). *See also Fretz*, 244 F.3d at 1326 ("Congress provided several exceptions to the general rule of discharge. One of those exceptions . . . is contained in [11 U.S.C.] § 523(a)(1)(C)").

The § 523(a) exception is to be "strictly construed in favor of the debtor." *Id.* at 1327. Moreover, "[t]he [United States] bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable under § 523(a)." *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000) (*en banc*) (bracketed text supplied). To meet its burden, the United States must demonstrate both a "conduct requirement" — *i.e.*, that the debtor attempted to evade or defeat the tax — as well as a "mental state requirement" — *i.e.*, that the debtor's conduct was "willful." *Fretz*, 244 F.3d at 1327, 1330.

"The conduct requirement is satisfied . . . where a debtor engages in affirmative acts to avoid payment or collection of taxes . . . ." *Id.* at 1329. A debtor's failure to pay a tax to the United States is insufficient, standing alone, to satisfy the conduct requirement. *See id.* at 1329-30. That said, affirmative conduct "covers attempts to evade or defeat a tax whether accomplished by 'acts of culpable omission [or] acts of

commission.' *Id.* (citations omitted and bracketed text in original). For example, a debtor has committed an "affirmative act" if, instead of paying an outstanding tax debt to the United States, he engages in intra-family transfers of property with little or no consideration, *see Griffith*, 206 F.3d at 1395, makes loans to family members for no consideration, or spends personal funds on luxury items. *See In re Hassan*, 301 B.R. 614, 620-21 (S.D. Fla. 2003).

In the present case, the government has met its burden to demonstrate the conduct requirement. The undisputed evidence of record is that appellant, acting in his capacity as an executor of his father's estate, transferred the sum of $733,613.23 from his father's estate (the last of the estate's liquid assets) to his struggling company. That transfer of funds was made with no consideration whatsoever. This court finds that appellant's actions in effecting the transfer of funds, coupled with his failure to satisfy the estate's tax obligation prior to depleting the estate's remaining liquid assets, satisfies the "conduct requirement" of § 523(a)(1)(C).

In addition to the "conduct requirement," the government must also prove three elements to demonstrate that a debtor had the requisite "mental state requirement": *i.e.*, that a debtor's failure to pay his taxes was "willful" for purposes of § 523(a)(1)(C). A debtor's actions were "willful" if he: (1) had a duty to file tax returns and pay taxes; (2) knew he had such a duty; and (3) voluntarily and

intentionally violated that duty. *Fretz*, 244 F.3d at 1330. Stated differently, a debtor acted willfully if he "voluntarily, consciously or knowingly, and intentionally" avoided his tax liability. *Id.* "Fraudulent intent is not required." *Id.* In this case, the first two components are not at issue. Appellant concedes, and the evidence of record is undisputed, that he *knew* of his *personal* duty to pay his father's estate's tax debt. "The third or willfulness component of the mental state requirement 'prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are *knowing* and *deliberate*.'" *Id.* (quoting *Matter of Birkenstock*, 87 F.3d 947, 952 (7th Cir. 1996) (emphasis supplied).

This court finds that the evidence of record shows that appellant voluntarily and intentionally avoided the estate tax debt when he, acting as an executor for his father's estate, transferred all of the estate's assets to himself and others between the years 1998 and 2004. The court is particularly troubled by appellant's transfer of the remaining cash assets of the estate to his struggling company, Pressure Concrete, during the same year that the estate stopped making installment payments to the United States. Appellant clearly used the estate's assets for his own purposes. Moreover, appellant's conduct stretches beyond mere non-payment of the estate's tax debt. Here, appellant took deliberate actions to deplete the estate's assets with

conscious and willful disregard for the estate's tax burden. As such, the court finds that the United States has met its burden to demonstrate, through the undisputed evidence of record, that the "mental state requirement" is satisfied.[24]

For the foregoing reasons, this court concludes that appellant is personally liable for the outstanding tax debt owed to the United States by the estate of George Carroll, and that the debt falls within the scope of 11 U.S.C. § 523(a)(1)(C). As a consequence, the debt owed to the United States is not dischargeable in bankruptcy. Accordingly, the holding of the bankruptcy court is due to be, and it hereby is, AFFIRMED. Costs are taxed to appellant.

The clerk is directed to serve a copy of this memorandum opinion and order upon appellant by certified mail, and to close this file.

DONE and ORDERED this 6th day of May, 2009.

United States District Judge

[24] Appellant's arguments, that he is *presently* unable to pay the tax bill and that it is unfair that he alone among his siblings must pay the debt, are not relevant to the legal issue before this court, and, in any event, they ring disingenuous. The fact remains that, when the tax was imposed on the estate in 1999, the estate had sufficient assets to satisfy the debt. Appellant, and his siblings, chose instead to divide those assets among themselves, and to let the tax debt fall by the wayside. Appellant's inability to pay the tax debt is a creature of his own making.